IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for SunFirst Bank,<br><br>Plaintiff,<br><br>v.<br><br>STEVE M. HEATON,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:13-CV-219 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on cross motions for summary judgment. For the reasons discussed below, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

I. BACKGROUND

Defendant Steven M. Heaton ("Heaton") was a member of the board of directors of SunFirst Bank ("SunFirst"), located in St. George, Utah. On or about August 20, 2007, SunFirst was loaned $5 million by Zions Bank. Zions Bank called the note due in or about November 2008.

At the time Zions Bank called the note due, SunFirst did not have sufficient capital to pay off the Zions Bank loan. John Campos, another SunFirst board member, suggested that he raise money from investors to purchase the Zions Bank loan, thus removing it from SunFirst's books. The investors would then be compensated with shares of SunFirst stock. Defendant eventually agreed to participate in this plan. However, to make his investment Defendant first needed to borrow funds from SunFirst.

1

Defendant borrowed $251,250.00 from SunFirst on or about June 24, 2009, and executed a promissory note in favor of SunFirst. These funds, along with funds from other investors, were used to retire the Zions Bank loan. In return, Defendant was provided with shares of SunFirst stock. Defendant has stated that he believed the stock would be used as collateral for the loan. Defendant further believed that he would only be required to make interest payments on the loan with the anticipation that the stock would increase in value and could be used to offset the amount of interest payments he made. Defendant also believed that, when the loan matured, SunFirst would eliminate the loan by taking back the stock that had been issued.

Defendant made interest payments on the loan until September/October of 2011, after which all payments ceased. However, as will be discussed in more detail below, Defendant purported to pay the loan in full by submitting a payment of $20,000.00 to the servicer of the loan, Midland Loan Services ("Midland"). In addition, Defendant previously attempted to settle his claim with Midland, but that attempt was rejected.

The Utah Department of Financial Institutions closed SunFirst Bank on November 4, 2011. Thereafter, Plaintiff was named as receiver of the assets of SunFirst Bank.

Plaintiff asserts claims against Defendant for breach of contract and, alternatively, unjust enrichment. Plaintiff seeks summary judgment on its breach of contract claim. Defendant opposes Plaintiff's Motion and has filed his own Motion, arguing that judgment should be entered in his favor based upon three affirmative defenses: (1) accord and satisfaction, (2) accommodation party, and (3) equitable estoppel. Additionally, Defendant argues that Plaintiff's claim for unjust enrichment should be dismissed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## III. DISCUSSION

Plaintiff seeks judgment on its breach of contract claim. Defendant argues that he is entitled to judgment on that claim based on his three affirmative defenses. In addition, Defendant seeks dismissal of Plaintiff's unjust enrichment claim. The Court finds it helpful to first discuss Defendant's affirmative defenses, followed by a discussion of Plaintiff's substantive claims.

A.   ACCORD AND SATISFACTION

Plaintiff's first affirmative defense is the defense of accord and satisfaction. The facts relevant to this defense are as follows.

After Plaintiff was appointed as receiver for SunFirst, Defendant informed Plaintiff that servicing of his loan was transferred to Midland. Defendant informed Plaintiff that he could send mail payments to the following address:

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

> Midland Loan Services, Inc.
> Attn: Lockbox Processing
> Lockbox Number 773825
> 3825 Solution Center
> Chicago, IL 60677-3008[4]

Defendant was also informed that any correspondence should be sent to a different address:

> Midland Loan Services, Inc.
> c/o FDIC Portfolio Servicing
> P.O. Box 25965
> Shawnee Mission, KS 66225-5965[5]

A letter sent by Midland in January 2012 also stated that mail payments should be sent to the Chicago Lockbox address.[6] In that letter, Midland informed Defendant that "[c]orrespondence should not be sent with your loan payment."[7] Defendant was provided the following address to send "[a]ll written inquiries (excluding payments) and general correspondence:"[8]

> Midland Loan Services, Inc.
> PO Box 25965
> Shawnee Mission, KS 66225-5965[9]

Plaintiff was further instructed that payoff quotes must be submitted in writing and could either be mailed to the correspondence address or faxed to the Payoff Department.[10]

---

[4] Docket No. 35 Ex. A.

[5] *Id.*

[6] *Id.* Ex. B.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

In January 2014, David LaFon, the contact person and asset manager for Defendant's loan, requested Defendant submit certain documentation to Midland.[11] Mr. LaFon stated that Defendant could submit the requested documentation through a number of different channels, including email, fax, regular mail, and overnight mail. The regular mail address provided in Mr. LaFon's letter was:

> Midland Loan Services
> Attn: Collateral Surveillance
> P.O. Box 25965
> Shawnee Mission, KS 66225-5965[12]

Importantly, the letter from Mr. LaFon did not request payment. Nor did the letter modify the previous letters directing that payments be sent to the Chicago lockbox address.

In addition to these letters, Plaintiff has provided a copy of a payment coupon sent to Defendant.[13] That payment coupon lists two address where Defendant could submit payments: (1) the Chicago lockbox address; and (2) directly to Mr. LaFon at PO Box 25970, Shawnee Mission, Kansas 66225-5970.

On February 25, 2014, while this litigation was pending, Defendant sent a check for $20,000.00 to Midland's collateral surveillance department, at PO Box 25965 in Shawnee Mission, Kansas.[14] Defendant included correspondence, stating that he proposed "settling the

---

[11] *Id.* Ex. C.

[12] *Id.*

[13] Docket No. 39 Ex 1-D.

[14] Docket No. 35 Ex. D.

debt by paying $20,000.00 as payment in full on the note with a full release of my obligation."[15]

In addition, Defendant wrote the words "in full" on the check.[16]

The check was received by Midland's processing department and, as a matter of course, was deposited as a regular payment. Upon learning of the check, Mr. LaFon directed repayment. That repayment check was forwarded to Defendant's counsel on March 24, 2014.

Defendant asserts that his payment of $20,000.00 constitutes an accord and satisfaction, relieving him of any further obligation. Defendant relies upon Utah Code Ann. § 70A-3-311. That provision states, in pertinent part:

> (1) If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, the amount of the claim was unliquidated or subject to a bona fide dispute, and the claimant obtained payment of the instrument, the following subsections apply.
> (2) Unless Subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
> (3) Subject to Subsection (4), a claim is not discharged under Subsection (2) if either of the following applies:
> (a) The claimant, if an organization, proves that:
> (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted, which states that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and
> (ii) the instrument or accompanying communication was not received by that designated person, office, or place.
> (b) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This Subsection (3)(b) does not apply if the claimant is an organization that sent a statement complying with Subsection (3)(a)(i).

---

[15] *Id.*

[16] *Id.*

(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.[17]

Subsection (1) requires the following elements: (1) good faith tender of an instrument in full satisfaction of a claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument. If these elements are met and the person proves that the instrument or accompanying written communication contained a conspicuous statement that the instrument was tendered in full satisfaction of the claim, the claim is discharged subject to the exception in Subsection (3).

Defendant asserts that he tendered his check in good faith. The official comments to the Uniform Commercial Code, which are appended to the Utah Code, provide that "good faith" means "not only honesty in fact, but the observance of reasonable commercial standards of fair dealing. The meaning of 'fair dealing' will depend upon the facts in the particular case."[18] The comments provide the following example:

> [S]uppose an insurer tenders a check in settlement of a claim for personal injury in an accident clearly covered by the insurance policy. The claimant is necessitous and the amount of the check is very small in relationship to the extent of the injury and the amount recoverable under the policy. If the trier of fact determines that the insurer was taking unfair advantage of the claimant, an accord and satisfaction would not result from payment of the check because of the absence of good faith by the insurer in making the tender.[19]

Plaintiff argues that a number of facts demonstrate that Defendant was not acting in good faith, specifically: (1) Defendant did not notify Plaintiff's counsel of the payment, despite the

---

[17] Utah Code Ann. § 70A-3-311.

[18] *Id.* cmt. 4.

[19] *Id.*

ongoing litigation; (2) Defendant paid only a small amount of the outstanding balance allegedly owed; (3) Defendant sent the check to Midland's collateral surveillance department; (4) Defendant did not address the payment to Mr. LaFon; and (5) Defendant was aware that Midland had rejected a previous settlement offer.

Defendant cannot show, as a matter of law, that he submitted his proposed payoff in good faith. As noted by Plaintiff, Defendant submitted his payoff during the midst of this litigation and he did so without notifying Plaintiff's counsel. Additionally, Plaintiff paid only a fraction of the amount owed under the loan, less than 10% of the original amount borrowed, and even less once interest and other amounts are calculated. Finally, as will be discussed, Defendant did not send his payment to the correct address. Based upon these considerations, Defendant is not entitled to summary judgment on his defense of accord and satisfaction. Therefore, the Court must turn to Plaintiff's argument that Defendant's accord and satisfaction defense fails as a matter of law.

Under § 70A-3-311(3)(a), a claim is not discharged if Plaintiff can prove that:

(i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted, which states that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and
(ii) the instrument or accompanying communication was not received by that designated person, office, or place.[20]

As set forth above, Plaintiff sent Defendant several letters indicating that payments should be sent to either Mr. LaFon or the Chicago lockbox address. In addition, several letters identified an address where correspondence could be sent. However, none of the letters

---

[20] *Id.* § 70A-3-311(3)(a).

contained a "conspicuous statement" stating that "communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place." Rather, Plaintiff only identified an address for all correspondence. There is no correspondence from Midland indicating that the address used by Defendant to submit his payment was to be used for communications concerning disputed debts, including an instrument tendered in full satisfaction of a debt. As a result, there is no notice that complies with Subsection (3)(a).

In reaching this conclusion, it is helpful to compare the statements in Plaintiff's letters to the Promissory Note between Defendant and SunFirst, which clearly did contain a notice in compliance with Subsection (3)(a). The Promissory Note contained the following provision:

> All written communications concerning disputed amounts, including any check or other payment instrument that indicates that payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: SUNFIRST BANK, 120 E. St. George Blvd. St. George, UT 84770.[21]

There is no comparable statement in any of the correspondence that Plaintiff sent Defendant. Thus, Subsection (3)(a) is inapplicable, which leaves Subsection (3)(b).[22]

Subsection (3)(b) states that, subject to Subsection (4), a claim is not discharged if Plaintiff "proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted."[23]

---

[21] Docket No. 39 Ex. 1-E.

[22] Subsection 3(b) would not apply if Plaintiff sent a letter complying with Subsection (3)(a)(i). *See* Utah Code Ann. § 70A-3-311(3)(b).

[23] *Id.* § 70A-3-311(3)(b).

Plaintiff clearly tendered repayment of the instrument within 90 days. Therefore, the Court must consider Subsection (4).

Again, Subsection (4) states:

A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.[24]

Comment 7 of this subsection states:

[i]f a person against whom a claim is asserted proves that the claimant obtained payment of a check known to have been tendered in full satisfaction of the claim by the claimant or an agent of the claimant having direct responsibility with respect to the disputed obligation, the claim is discharged even if (i) the check was not sent to the person, office, or place required by a notice complying with subsection [(3)(a)], or (ii) the claimant tendered repayment of the amount of the check in compliance with subsection [(3)(b)].[25]

Comment 7 clarifies that a claimant knows that a check was tendered in full satisfaction of a claim when the claim has "actual knowledge."[26] When, as here, the claimant is an organization, the claimant has actual knowledge when it has been "brought to the attention of the individual conducting that transaction, and in any event when it would have been brought to his attention if the organization had exercised due diligence."[27] The "individual conducting that transaction" is "an employee or other agent of the organization having direct responsibility with respect to the dispute."[28] Further,

---

[24] *Id.* § 70A-3-311(4).

[25] *Id.* cmt. 7 (internal quotation marks omitted).

[26] *Id.*

[27] *Id.*

[28] *Id.*

> [i]f a full satisfaction check is sent to a lock box or other office processing checks sent to the claimant, it is irrelevant whether the clerk processing the check did or did not see the statement that the check was tendered as full satisfaction of the claim. Knowledge of the clerk is not imputed to the organization because the clerk has no responsibility with respect to an accord and satisfaction.[29]

In this case, the individual conducting the transaction is Mr. LaFon. Mr. LaFon has provided an affidavit stating that he communicated with Defendant about the loan and "made Heaton aware that I was the point of contact and asset manager for this loan."[30] Defendant similarly testified that he was aware that Mr. LaFon was designated as the point person on his loan, as Defendant had tried to settle with Mr. LaFon before.[31] It is undisputed that Defendant did not send his purported payoff to Mr. LaFon. Rather, Defendant submitted his payment to the collateral surveillance department. Plaintiff has provided undisputed evidence demonstrating that the collateral surveillance department gathers financial information on borrowers and scans that information into Midland's computer system.[32] That department does not handle payoff requests, payments tendered in full, or settlements, nor is it responsible for processing payments.[33] Therefore, Subsection (4) does not apply and Defendant's affirmative defense of accord and satisfaction fails as a matter of law.

B.  ACCOMMODATION PARTY

Defendant next argues that Plaintiff's claims are barred because Defendant was simply acting as an accommodation party for SunFirst Bank. In response, Plaintiff argues that

---

[29] *Id.*

[30] Docket No. 39 Ex 1, ¶ 13.

[31] Docket No. 36 Ex. D, at 105:13–17.

[32] Docket No. 39 Ex 1, ¶ 29.

[33] *Id.*

Defendant was not an accommodation party and, even if he were, his defense is barred by the

*D'Oench*[34] doctrine and 12 U.S.C. § 1823(e).

Utah Code Ann. § 70A-3-419(1) provides:

> If an instrument is issued for value given for the benefit of a party to the instrument, the "accommodated party," and another party to the instrument, the "accommodation party," signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation."

Under § 70A-3-419(5), "[a]n accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party. An accommodated party who pays the instrument has no right of recourse against, and is not entitled to contribution from, an accommodation party."

Defendant is not an accommodation party. As stated, an accommodation party is one who signs an instrument "without being a direct beneficiary of the value given for the instrument." In this case, Defendant received a direct benefit from the loan. Defendant was a stockholder and member of the board of directors of SunFirst. By receiving the loan, Defendant was able to help retire the debt that SunFirst owed to Zions Bank, benefitting SunFirst and, thus, himself. In addition, Defendant received additional stock in SunFirst. Though that stock is now valueless, Defendant planned to use that stock for his benefit. Therefore, the Court finds that Defendant is not an accommodation party.

Even if he were an accommodation party, Defendant's claim is barred by the *D'Oench* doctrine and 12 U.S.C. § 1823(e).

---

[34] *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

"The federal common law *D'Oench* doctrine . . . prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift."[35] "The purpose of the *D'Oench* doctrine is to permit regulators to accurately appraise the assets of savings institutions by allowing the regulators to rely on the assets' face value."[36] "As the doctrine has evolved, its focus has shifted from the fraudulent, illegal, or secret character of the debtor's acts to the effect the acts have on the regulatory agency's ability to evaluate quickly and accurately a savings institution's assets."[37] "The design of the *D'Oench* doctrine thus 'favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can.'"[38] The *D'Oench* doctrine "has been held applicable to virtually any claim or defense that has the effect of adversely impacting the value of assets held by a federal banking regulator as a consequence of liquidation or receivership of a failed institution."[39]

The *D'Oench* doctrine is now codified at 12 U.S.C. § 1823(e). That provision states:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
(A) is in writing,

---

[35] *FDIC v. Noel*, 177 F.3d 911, 917 (10th Cir. 1999) (citation and internal quotation marks omitted).

[36] *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1577 (10th Cir. 1993).

[37] *Id.* at 1576.

[38] *Noel*, 177 F.3d at 917 (quoting *Bell & Murphy Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir. 1990)).

[39] *Nat'l Credit Union Admin. Bd. v. Keeling*, No. CV-95-1886, 1996 WL 331091, at *3 (E.D.N.Y. May 31, 1996).

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(D) has been, continuously, from the time of its execution, an official record of the depository institution.[40]

The requirements of § 1823(e) are certain and categorical.[41]

It is undisputed that Defendant's alleged agreement that he was acting as an accommodation party for the bank does not meet the requirements of § 1823(e). Therefore, Defendant's accommodation party defense is barred.

*D'Oench* provides a helpful discussion. In that case, the Supreme Court stated:

> [A]n accommodation maker is not allowed that defense as against the receiver of the bank and its creditors, or at times even as against the bank itself, where his act contravenes a general policy to protect the institution of banking from such secret agreements. In some of those cases the accommodation maker was party to the scheme of deception in the sense that he had full knowledge of the intended use of the paper. In others he had no positive idea of committing any fraud upon any one. Yet he has not been allowed to escape liability on the note as against the receiver even though he was very ignorant and ill-informed of the character of the transaction. . . . The defendant may not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.[42]

---

[40] 12 U.S.C. § 1823(e)(1).

[41] *Langley v. FDIC*, 484 U.S. 86, 95 (1987); *see also FDIC v. Oldenburg*, 34 F.3d 1529, 1550 (10th Cir. 1994) (describing § 1823(e)'s requirements as "strict and categorical").

[42] *D'Oench*, 315 U.S. at 458–59 (citations and internal quotation marks omitted).

The Tenth Circuit has similarly held that an accommodation party is estopped from denying liability to the FDIC as receiver for a bank.[43] Based upon *D'Oench*, 12 U.S.C. § 1823(e), and binding Tenth Circuit precedent, the Court finds that Defendant's accommodation party defense fails as a matter of law.

C. EQUITABLE ESTOPPEL

Defendant's final affirmative defense is equitable estoppel. Defendant argues that Plaintiff should be equitably estopped from asserting claims against him because Campos represented that Defendant would only be required to make interest payments, that the bank would eliminate the loan by taking back the stock that had been issued, and that Defendant would not be required to pay back the loan in the event the loan defaulted or the bank failed.

For substantially the same reasons set forth above, Defendant's equitable estoppel defense must be rejected. None of the alleged representations meet the requirements of § 1823(e). Therefore, Defendant's equitable estoppel defense is similarly barred.

D. PLAINTIFF'S CLAIMS

Having addressed Defendant's affirmative defenses, resolution of Plaintiff's claims is relatively straightforward. Plaintiff brings claims for breach of contract and, alternatively, unjust enrichment.

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[44] As set forth above, Defendant entered into a contract whereby he borrowed

---

[43] *FDIC v. Van Laanen*, 769 F.2d 666, 667 (10th Cir. 1985).

[44] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001).

$251,250.00 from SunFirst.  SunFirst disbursed the loan amount.  Defendant has failed to make payments on the loan since October 2011.  Finally, Plaintiff has suffered damages as a result of Defendant's failure to pay.  Because Defendant's affirmative defenses fail for the reasons set forth above, judgment in favor of Plaintiff is appropriate on its breach of contract claim.

Plaintiff has pleaded a claim for unjust enrichment in the alternative.  Because judgment is appropriate on Plaintiff's breach of contract claim, the Court will dismiss Plaintiff's claim for unjust enrichment.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 36) is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 34) is DENIED.

The hearing set for July 15, 2014, is STRICKEN.

Within fourteen (14) days of this Order, Plaintiff is directed to submit a proposed judgment.  Defendant may file any objections to the proposed judgment fourteen (14) days thereafter.

DATED this 18th day of June, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge